IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

```
ROBERT H. HUDSON            )
                            )
    Plaintiff,              )
                            )
    v.                      )    CIVIL ACTION NO.
                            )      1:06cv606-MHT
SHAW ENVIRONMENTAL AND      )         (WO)
INFRASTRUCTURE, INC.,       )
                            )
    Defendant.              )
```

OPINION

Plaintiff Robert H. Hudson brings this employment-discrimination lawsuit against his former employer, defendant Shaw Environmental and Infrastructure, Inc. (Shaw EII). Hudson asserts that Shaw EII violated the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. §§ 621-634, and that Shaw EII breached a contract in violation of state law. Jurisdiction is proper under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights), 29 U.S.C. § 626 (ADEA), and 28 U.S.C. § 1367 (state law).

This case is before the court on Shaw EII's motion for summary judgment. For the reasons that follow, the motion will be granted.

## I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II.  BACKGROUND

Hudson began working for Shaw EII's predecessor company, IT Corporation, in 2002, as an electronics technician.  Under contract with the United States government, IT Corporation, and later Shaw EII, provided maintenance of training systems at Fort Rucker, where military and civilian instructors who were not employed by Shaw EII conducted training in air-traffic control.  Hudson applied for the job at the urging of an acquaintance, Travis Lee.  In varying capacities over the course of his employment, Hudson worked alongside Lee.  As electronics technicians, Hudson and Lee maintained training laboratories.  In May 2002, Shaw EII assumed IT's contract at Fort Rucker.  At this point, Hudson's employment turned rocky.

A new system for maintenance was instituted at Fort Rucker; because Hudson was unfamiliar with it, he had difficulty with it.  At the same time, relations

between Hudson and Lee soured. Both to Hudson alone and while in the presence of a supervisor, Lee referred to Hudson as "old" and "worn-out." Hudson deposition, defendant's motion for summary judgment (doc. no. 30), 47:17. In addition, after the new system was instituted, Hudson began to incur complaints. In December 2004, he was reprimanded for sleeping on the job; Lee reported this behavior to Hudson's supervisor, after witnessing it himself and after receiving complaints from non-Shaw EII instructors at Fort Rucker.

In July 2005, based on a complaint, Hudson was reprimanded for inaccurately entering in a logbook that a lab was down for one-half hour. After this incident, at a meeting on July 22, Hudson was put on 'probation.' He was told that any further disciplinary action would result in termination.

Hudson felt that this reprimand was unfair, and he showed the resulting disciplinary-action form to others on the base, including non-Shaw EII employee

4

instructors.  One of the instructors who had reported the July 2005 incident complained to Shaw EII that, by showing the disciplinary form to other instructors, Hudson was attempting to "undermine his position," and he requested that Hudson be removed.  Willis affidavit, defendant's motion for summary judgment (doc. no. 30), Exhibit D, ¶ 19.

On August 1, another meeting was held, and Shaw EII terminated Hudson.

## III. DISCUSSION

Hudson claims that, because o Shaw EII terminated him and discriminated against him in the assignment of shifts and overtime.  He brings these claims under the ADEA.  The ADEA prohibits an employer from discriminating in employment because of an employee's age; the protected group under the ADEA includes employees over the age of 40, 29 U.S.C. § 621(a)(1), as Hudson was at the time of his hiring and termination.

5

### A. Age-Discrimination Claims

### 1. Termination claim

Hudson attempts to survive summary judgment by making out a case under the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this approach, the employee must first set forth a prima-facie case of age discrimination. Once the employee has satisfied this burden, a presumption of age discrimination arises. If the employee establishes a prima-facie case, the burden then shifts to the employer to rebut the presumption by articulating a legitimate, non-discriminatory reason for its employment action. Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000). The employer has the burden of production, not of persuasion, and thus does not have to persuade a court that it was actually motivated by the reason advanced. See, e.g., Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253-55 (1981); McDonnell Douglas, 411 U.S. at 802. Once the employer satisfies this burden of production,

the presumption of discrimination is eliminated, and the employee has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima-facie case, sufficient to permit a reasonable factfinder to conclude that the reason given by the employer was not the real reason for the adverse-employment decision. Chapman, 229 F.3d at 1024. The employee may meet this burden by persuading the court that a discriminatory reason more than likely motivated the employer or by demonstrating that the proffered reason for the employment decision is not worthy of belief. Burdine, 450 U.S. at 256; see also Young v. General Foods Corp., 840 F.2d 825, 828 (11th Cir. 1988).

There are a number of ways to set forth a prima-facie case of discrimination. In discussing the elements for a prima-facie case, Hudson and Shaw EII differ on whether the termination claim should be analyzed as a reduction-in-force case would be or as a termination case would be. This court need not resolve

7

this dispute, but will, instead, assume that Hudson has established a prima-facie case and turn to the issue of pretext, as Shaw EII has come forth with a legitimate, non-discriminatory reason for Hudson's firing.

Shaw EII says Hudson was fired for three reasons: first, because he violated company rules by distributing confidential information when he showed documents concerning his July 2005 disciplinary, along with emails concerning his disciplinary, to instructors at Fort Rucker; second, because his behavior constituted disrespect of a client; and, third, because Shaw EII was instructed by a non-Shaw EII instructor at the base not to allow Hudson back on the premises. All three of these are legitimate reasons for firing Hudson.

Hudson must now come forward with evidence "that the reasons given by the employer were not the real reasons for the adverse employment decision." Chapman, 229 F.3d at 1024. In other words, Hudson must come forward with evidence that Shaw EII's reasons are

8

"unworthy of credence," for example, because of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997).

Hudson's major theory of his case is that "Lee sought Hudson's ouster and enlisted the Army Sergeant to help him and then convince management, albeit consciously or unconsciously, to adhere to the plan to get rid of Hudson." Plaintiff's brief in opposition to summary judgment (doc. no. 33), 6. In other words, Hudson seeks to show that Lee had some role in his termination. However, Lee did not make the decision to terminate Hudson, and Hudson concedes that he knows of no instance of Lee's making his discriminatory views known to the parties who made the decision to terminate Hudson. Hudson must establish a causal link between Lee's statements and the decision to terminate him, but he cannot. See Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d 1236, 1249 (11th Cir. 1998).

9

Hudson also points to the Collective Bargaining Agreement in support of his claim that Shaw EII's three reasons are pretextual. That agreement reads as follows:

> "Inasmuch as the Employer performs work for the U. S. Government and in accordance with the contract, the Employer is responsible for the conduct of its employees. The Government may direct the Employer to remove certain individuals for violating Government regulations or laws. It is understood that the Employer may terminate any employee if directed to do so by the Government under the provision of its Contract or if the Government denies the employee access to any of the work sites. The Employer and the Union agree to intercede collectively on the employee's behalf if there are extenuating circumstances that, in the opinion of the parties, tend to make the decision made by the Government unfair to the employee."

Collective Bargaining Agreement, Def. M. Summ. J., Doc. No. 30, Exhibit G, 11. Hudson appears to argue that Shaw EII's action was inconsistent with this provision. However, this provision, which provides that Shaw EII can terminate an employee denied access to any work

site, as Hudson was here, appears only to lend support to the notion that Shaw EII has presented a credible reason for his firing.

In a related vein, Hudson contends that pretext is shown in that the charges against him were "trumped up." Plaintiff's brief in opposition to summary judgment (doc. no. 33), 16. Hudson cannot prevail, however, by "simply quarreling with the wisdom of [the employer's] reason," Chapman, 299 F.3d at 1030; nor can he prevail simply by attempting to show that Shaw EII was incorrect. "An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct." Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1363 n. 3 (11th Cir. 1999). Thus, the important inquiry is not into whether Hudson believed that the charges were exaggerated; the important question is whether Shaw EII did. Hudson has presented no evidence to suggest that Shaw EII believed that he was not appropriately disciplined.

11

Finally, Hudson contends that the fact that Lee was retained while he was not demonstrates pretext. For this theory of recovery to succeed, according to the Eleventh Circuit Court of Appeals in <u>Holifield v. Reno</u>, 115 F.3d 1555 (11th Cir. 1997), Hudson must show that he and Lee were similarly situated in all relevant respects. 115 F.3d at 1562. "In determining whether employees are similarly situated ... it is necessary to consider whether the employee is accused of the same or similar conduct." <u>Id</u>. Although <u>Holifield</u> addressed comparison in the context of the prima-facie case, the same holds true in demonstrating pretext. While Hudson admittedly violated numerous policies, he cannot show that Lee violated any Shaw EII policies, much less that he violated the same policies. Thus, Lee is not a valid comparator.

2. Overtime-and-shifts claim

Hudson claims that he was given less-advantageous shifts and less overtime work than was Lee. However,

12

he does not allege that he requested overtime or any shifts other than the ones he was given or that he was discouraged from requesting those shifts and overtime or that he felt that requesting the overtime or different shifts would have been futile.  Cf. International Brotherhood of Teamsters v. United States, 431 U.S. 324, 368 (1977) (""When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting and application.").  In short, he presents no evidence that adverse action was taken against him on the basis of his age.  He also does not appear to make any contention that Lee had a hand in his assignments to shifts or to overtime.

### 2. Breach-of-Contract Claim

Hudson claims that, under state-law, his termination violated an employment contract he had with Shaw EII.

13

However, it does not appear from the record that he had an employment contract with Shaw EII that specified the duration of his employment, such that his employment could be considered other than at-will.  Alabama law is clear that "an indefinite hiring is presumed to be at the will of either party, in the absence of custom or facts showing a contrary intention."  <u>Aldridge v. DamilerChrysler Corp.</u>, 809 So.2d 785, 793 (Ala. 2001) (quoting <u>Alabama Mills, Inc. v. Smith</u>, 186 So. 699, 702 (Ala. 1939)).  Hudson has not produced any evidence fo a contrary intention.  His breach-of-contract claim is meritless.

                              * * *

   For the foregoing reasons, Shaw EII's motion for summary judgment will be granted.  An appropriate judgment will be entered.

   DONE, this the 30th day of May, 2007.


                              ___/s/ Myron H. Thompson____
                              **UNITED STATES DISTRICT JUDGE**